**Hilario SANCHEZ**

v.

**CITY OF HARTFORD, et al.**

**No. 3:97CV01922(AHN).**

United States District Court,
D. Connecticut.

Feb. 14, 2000.

Paul Mpande Nqobeni, East Hartford, CT, Norma I. Sanchez–Fiqueroa, Hartford, CT, for plaintiff.

James J. Szerejko, Brian P. Leaming, Halloran & Sage, Hartford, CT, for defendants.

## RULING AND ORDER

NEVAS, Senior District Judge.

Based upon the evidence and arguments provided to the Court by the parties both in writing and at the summary judgment hearing,[1] the Court makes the following findings of fact:

1. The plaintiff, Hilario Sanchez (hereinafter the "plaintiff") is employed as a firefighter for the City of Hartford.

---

1. The court held a hearing on Hartford's motion for summary judgment on December 1, 1999.

2. The defendants Denise Napier, Kathleen Palm and Shelley Sheppard, were, at all relevant times to the complaint, employed by the City of Hartford and were acting within the scope of their employment. The defendant Judith Reynolds commenced her employment as an Administrative Analyst with the City Treasurer's Office on March 10, 1997 and, thereafter, was acting within the scope of her employment.

3. The defendant City of Hartford (hereinafter the "City") is a municipal corporation within the state of Connecticut.

4. The plaintiff voluntarily participated in the City's Deferred Compensation Plan (the "Plan") which was administered by ITT Hartford Insurance Group.

5. By participating in the Plan the plaintiff authorized the City to withhold a portion of his salary to be invested for payment at a later date pursuant to 26 U.S.C. § 457 of the Internal Revenue Code ("Section 457").

6. The purpose of Section 457 is to encourage participants to save towards retirement by providing the participants with significant tax benefits. 26 U.S.C. § 457. In order to meet the requirements of Section 457 and thus qualify for such favorable tax treatment, Internal Revenue regulations require plans such as the Plan to limit the ability of their participants to withdraw funds therefrom. 26 U.S.C. § 457(d); 26 C.F.R. § 1.457–2.

7. Proceeds from the Plan cannot be distributed until the earlier of (1) the calendar year in which the participant attains age 70 1/2; (2) the participant is separated from his employer; (3) the participant is faced with an unforeseeable emergency; or (4) the participant dies. 26 U.S.C. § 457(d)(1)(A); 26 C.F.R. § 1.457–2.

8. The circumstances that constitute an unforeseeable emergency depend upon the facts of each case, but, in any case, payment may not be made unless (1) there is a severe financial hardship which has occurred because of an unforeseeable emergency, and (2) such hardship cannot be relieved (i) through reimbursement or compensation by insurance or otherwise; (ii) by liquidation of assets, to the extent that liquidation of such assets would not itself cause severe financial hardship; or (iii) by cessation of deferrals under the plan. 26 C.F.R. § 1.457–2(h)(4).

9. Pursuant to Internal Revenue regulations, the determination as to whether or not an applicant satisfies the IRS definition of a severe financial hardship rests with the plan sponsor.

10. A Plan which is not in compliance with IRS Regulations runs a risk of becoming ineligible, with all the assets being distributed and taxed. 26 U.S.C. § 457(b) and 457(f).

11. On or about November 20, 1996, the plaintiff requested withdrawal of his deferred compensation proceeds claiming an unforeseeable emergency.

12. Section 1.457(2)(h)(4) of the Internal Revenue Regulations defines an unforeseeable emergency as severe financial hardship on the part of the participant resulting from a sudden and unexpected illness or accident of the participant or of a dependent, a loss of the participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances as a result of events beyond the control of the participant.

13. In April 1994, the plaintiff's wife ("Mrs.Sanchez") became pregnant with her second child. On November 17, 1994, due to hypertension and bouts of early labor pain, her physician ordered her to stay in bed and directed her to discontinue her employment. Mrs. Sanchez did as her physician instructed and stopped working.

14. On January 22, 1995, Mrs. Sanchez gave birth to Alec Hilario ("Alec"). Alec was born with an acute case of hematoma—a bleeding vein located between his scalp and skull—that required immediate hospitalization. On February 16, 1995, after Alec developed a serious infection as a

result of the hematoma, he was hospitalized and underwent surgery. Then, at six months of age, Alec's severe allergies to milk and eggs surfaced. According to his allergist, Dr. Rosen, his food allergies "had the potential to manifest themselves as a potentially life-threatening anaphylasis even if he was only exposed to a small amount of milk or eggs."

15. Due to Alec's medical condition, specifically the fact that his allergies required his eating habits to be carefully supervised, Mrs. Sanchez was not able to return to her previous job and was not able to find another employer who would accommodate her schedule. In fact, she remained unemployed for several months, ultimately taking a part-time job for ten to fifteen hours per week so that she could be home with Alec when the plaintiff was at work.

16. Mrs. Sanchez's pregnancy and Alec's illness had a devastating financial impact on the family. They suffered a drastic decrease in their monthly income and were therefore unable to make their monthly mortgage payments as well as their other monthly expenses.

17. The plaintiff had no insurance, savings or assets that he could use to cover all these expenses.

18. The plaintiff's inability to make full and timely payments on his mortgage resulted in a foreclosure action being brought by the mortgage company. A foreclosure action is presently pending in Hartford Superior Court and is styled *Principal Residential Mortgage, Inc. v. Hilario Sanchez, Jr., et al.,* No. 97cv0567346S.

19. The plaintiff has exhausted all other available means of reimbursement or compensation in which to relieve his financial hardship, but has been unable to alleviate the financial burden imposed by the mortgage foreclosure. The plaintiff has no other assets with which to bring his mortgage current and alleviate his present financial hardship. The plaintiff requires the sum of $22,000.00 to alleviate his financial hardship.

20. The plaintiff, therefore, has experienced an unforeseeable emergency, as defined by IRS regulations. Based upon the facts and circumstances, the Court finds that the plaintiff is entitled to receive a withdrawal of his share of the Plan currently being administered by the City of Hartford and its third-party administrator, ITT Hartford.

21. The Court finds that the sum of $22,000.00 is necessary to alleviate the severe financial hardship currently being experienced by the plaintiff.

Notwithstanding the foregoing findings of fact, the Court has also determined that the City did not violate the plaintiff's constitutional rights, as alleged in the Amended Complaint, and hereby enters a judgment of dismissal in this action. The parties are to bear their respective costs and attorneys fees.